UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN FISCHLER, Individually and on behalf of all other persons similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>NEBIA INC. D/B/A NEBIA,<br><br>       Defendant. | ECF CASE<br><br>No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.     Plaintiff Brian Fischler, who is legally blind, brings this civil rights action against Defendant Nebia Inc. d/b/a Nebia ("Defendant") for its failure to design, construct, maintain, and operate its Website, https://nebia.com/ (the "Website"), to be fully accessible to and independently usable by Plaintiff Fischler and other blind or visually-impaired people. Defendant denies full and equal access to its Website.

2.     Plaintiff Fischler, individually and on behalf of others similarly situated, asserts claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") against Defendant.

3.     Plaintiff Fischler seeks a permanent injunction to cause Defendant to change its corporate policies, practices, and procedures so that its Website will become and remain accessible to blind and visually-impaired consumers.

## THE PARTIES

4.     Plaintiff Fischler is, at all relevant times, a resident of Astoria, New York, Queens County. As a blind, visually-impaired handicapped person, he is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the NYSHRL and NYCHRL.

5.     Upon information and belief, Defendant is at all relevant times a foreign corporation that is organized under California law and is authorized to do business in the State of New York.  Defendant does business in the State by advertising its products in New York and shipping its products to New York consumers.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff Fischler's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332.

7.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Fischler's NYSHRL, N.Y. Exec. Law Article 15, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, claims.

8.     Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(D) because jurisdiction exists over it: it has a continuous and systematic course of doing business in this District, as it operates a location in this District, rents property in this District, employs individuals in this District, is registered to do business here, pays taxes in this District; and it is purposely and intentionally availing itself of the privileges of conducting business in this District.

9. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## NATURE OF ACTION

10. The COVID-19 pandemic has shifted the world into an almost entirely online model. Restaurants need a website for customers to place pick-up and delivery orders. Entertainment venues are delivering performances to audiences via their Websites or other online streaming services. Our educational institutions, including private schools and Universities have shifted to a virtual classroom with distance-learning being the new normal. Furthermore, with store closures or capacity limitations, stores are relying on their Websites to serve as the fundamental point of contact between their business and consumers. In order for blind and visually impaired consumers to access these Websites, they must use screen reading software.

11. Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech ("JAWS") is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

12. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

13.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 Levels A and AA of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure its websites are accessible.

14.     For a website to be equally accessible to a blind or visually impaired person, under these guidelines, it should have following:

        a.      Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, depriving that person from knowing what is on the website.

        b.      Videos have audio description.

        c.      Title frames with text are provided. Absent these titles, navigating a website is particularly difficult.

        d.      Webpage headings are properly labeled with the topic or purpose of the webpage, versus being blank. Screen readers read out page headings, allowing users to quickly skip to a section. Navigation is, however, very difficult without those headings.

e.    Equivalent text is provided when using scripts.

f.    Forms may be completed with the same information and functionality as for sighted persons. Absent forms being properly labeled, it is difficult for a visually impaired or blind individual to complete the forms, as they do not know what the fields, how to input data, or what options to select (e.g., selecting a date or a size). A compliant website will, instead, provide labels or instructions when content requires user input. This includes captcha prompts, requiring the user to verity that he or she is not a robot.

g.    Information about the meaning and structure of content is conveyed by more than the visual presentation of content.

h.    Web pages do not share the same ID or title. When two or more elements on a web page share the same ID or title, it causes problems in screen readers which use IDs for labeling controls and table headings.

i.    Linked images must contain alt-text explaining the image. Absent that alt-text, a screen reader has no content to present the user as to what the image is.

j.    The purpose of each link is easily determined from how the link is labeled. Absent properly labeling each link or when no description exists, it confuses keyboard and screen-reader users as they do not know the purpose of the links. This includes captcha prompts.

k.    No redundant links where adjacent links go to the same URL address. When redundant links exist, it causes additional navigation and repetition for keyboard and screen-reader users.

l.      Portable Document Formats (PDFs) are accessible. When they are inaccessible, the visually impaired or blind individual cannot learn what information is on them.

m.      One or more keyboard operable user interface has a mode of operation where the keyboard focus indicator is discernible.

n.      Changing the setting of a user interface component does not automatically cause a change of content where the user has not been advised before using the component.

o.      The name and role of all user interface elements can be programmatically determined; items that can be set by the user can be programmatically set; and/or notification of changes to these items are available to user agents, including assistive technology.

<u>STATEMENT OF FACTS</u>

<u>Defendant, Its Website And Its Website's Barriers</u>

15.      Defendant is a seller of showerheads and accessories, such as shower curtains, bathmats, and more. Defendant owns and operates a single brick and mortar location in New York at 107 West 20th Street, New York, New York, but customers throughout the United States can only purchase Defendant's products online through Defendant's Website. Defendant operates its New York brand store to allow its customers to experience the showerheads in Defendant's "Showrooms." Through the Website, customers can purchase either the Nebia by Moen Quattro, Nebia by Moen, or Nebia Spa Shower 2.0 model and accessories, including faucets, valves, shower slide bars, bathmats, shower curtains, and more.

16.     Defendant's Website is heavily integrated with its single brick and mortar location. Through the Website, customers can learn information about the store's location, learn about Defendant's Nebia by Moen Quattro, Nebia by Moen, or Nebia Spa Shower 2.0 model, including details, specifications, and use, learn about accessories, read the blog, get contact information, get answers to frequently asked questions, and get information about Defendant's NYC location.  It is also where potential customers can learn about Defendant's mission, and its "Showroom" program.

17.     Defendant markets its products to those within the State of New York. It does so by advertising to New York consumers and shipping its products to customers within the State.  It also does so by operating a New York location to induce customers to book an appointment to test their products at Defendant's "Showroom" before purchasing it online through its Website.

18.     It is, upon information and belief, Defendant's policy and practice to deny Plaintiff Fischler and other blind or visually-impaired users access to its Website, thereby denying the facilities and services that are offered and integrated with its store. Due to its failure and refusal to remove access barriers to its Website, Plaintiff Fischler and visually-impaired persons have been and are still being denied equal access to Defendant's store and the numerous facilities, goods, services, and benefits offered to the public through its Website.

19.     Plaintiff Fischler cannot use a computer without the assistance of screen-reading software. He is, however, a proficient screen-reader user and uses it to access the Internet. He has visited the Website on separate occasions using screen-reading software.

20.     During his visits to the Website, the last occurring on or about November 22, 2021, Plaintiff Fischler encountered multiple access barriers that denied him the enjoyment of the facilities, goods, and services of the Website, as well as to the goods and services of Defendant's store. Because of these barriers he was unable to, substantially equal to sighted individuals:

a.     Know what is on the Website.  This is due in part to the fact that images are poorly labeled with no alternative text.  On the home page, most of the images are not detected by the screen reader. As Plaintiff Fischler was navigating the home page, he encountered problems with screen reader focus. When Plaintiff Fischler is at the top of the home page, screen reader focus gets stuck in the "newsletter pop up," preventing him from navigating the Website and forcing him to sign up for Defendant's newsletter if he would like to access Defendant's Website.

b.     Navigate the Website.  Plaintiff Fischler had difficulty navigating this Website.  As mentioned above, images are not properly labeled.  When accessing the Nebia by Moen Quattro product home page, the images depicting the product and its specifications and components were not detected by the screen reader. Sighted users get images depicting the Nebia by Moen Quattro product's details, specifications, and accessories, which allows sighted users to be understand efficiency and use.  These images are inaccessible to Plaintiff Fischler.  Furthermore, the images are labeled as the products name, so Plaintiff Fischler kept getting the message "Matte Black empty group," which ultimately confused him. All the color options are not available to Plaintiff Fischler.  The color options are labeled as "buttons," but Plaintiff Fischler does not know that these "buttons" allow him to change the color of the product. Plaintiff Fischler was

able to change the color from Matte Black to Chrome, by randomly selecting buttons, but he was not allowed to select the other three colors. There is also no use of ARIA alerting Plaintiff Fischler that new content was loaded. When he tried to change the style of the product from "Rainshower" to "Handshower" there was no use of ARIA alerting Plaintiff Fischler that he successfully changed the style. With sighted assistance, Plaintiff Fischler was able to change the style to Handshower, but screen reader focus was automatically thrown to the text on the home page and therefore Plaintiff Fischler was forced to adjust screen reader focus back to the top of the page to continue navigating the home page. Plaintiff Fischler again encountered problems with screen reader focus when accessing the product's FAQs. Plaintiff Fischler was unable to expand the FAQs and instead screen reader focus was thrown to the bottom of the page. On the product page, sighted users get access to videos about customer reviews so that they can better understand product efficiency and use. However, these videos are completely inaccessible to Plaintiff Fischler. As he tried to play the videos, Plaintiff Fischler kept getting an "Error" message and therefore he was unable to gain access to customer testimonials. Additionally, on the "Cart" home page, Plaintiff Fischler again experienced problems with screen reader focus when he tried to adjust the quantity of the product. Plaintiff Fischler tried to adjust the quantity of the Nebia by Moen Quattro product from one (1) to three (3), but screen reader focus was automatically thrown to the top of the page, making it difficult for Plaintiff Fischler to navigate the Website and complete the checkout process.

        c.      Complete a purchase. Plaintiff Fischler was unable to complete a purchase on Defendant's Website. When checking out, Plaintiff Fischler encountered

problems with screen reader focus. When trying to enter his address, screen reader focus is thrown to the top of the page, therefore he could not complete his purchase.

21.     Plaintiff Fischler was denied full and equal access to the facilities and services Defendant offers to the public on its Website because he encountered multiple accessibility barriers that visually-impaired people often encounter with non-compliant Website:

a.      Images are not properly labeled.

b.      Elements are not properly labeled.

c.      Frame elements do not have title attributes.

d.      Label elements are blank.

e.      Links use general text with no surrounding text explaining the links' purpose.

f.      Button element groups are empty and have no programmatically determined name.

g.      Radio button groups are not contained in a fieldset element.

h.      Form controls have no labels or titles.

i.      Form controls have no label and no programmatically determined name.

j.      Forms have fields without label elements or title attributes.

k.      Webpages have links to a PDF file but do not provide a link to download Acrobat Reader.

l.      Webpages have markup errors.

m.      Form field labels are not unique on a page or enclosed in a fieldset with a legend that makes the label unique.

n.      Headings are not nested correctly.

o.      Headings are empty.

p.      Several links on a page share the same link text but go to different destinations.

Defendant Must Remove Barriers to Its Website

22.     Due to the inaccessibility of its Website, blind and visually-impaired customers such as Plaintiff Fischler, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Defendant offers to the public on its Website. The Website's access barriers that Plaintiff Fischler encountered have caused a denial of his full and equal access in the past, and now deter him on a regular basis from accessing the Website. These access barriers have likewise deterred him from visiting Defendant's store and enjoying it equal to sighted individuals.

23.     If the Website was equally accessible to all, Plaintiff Fischler could independently navigate it, view goods and service items, locate Defendant's store and learn their hours of operation, learn about the items for sale and complete a desire transaction as sighted individuals do.

24.     Through his attempts to use the Website, Plaintiff Fischler has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

25.     Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff Fischler and other visually-impaired consumers with equal access to the

Website, Plaintiff Fischler alleges that Defendant has engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

      a.     Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff Fischler;

      b.     Failing to construct and maintain a website that is sufficiently intuitive to be equally accessible to visually-impaired individuals, including Plaintiff Fischler; and,

      c.     Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff Fischler, as a member of a protected class.

26.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

27.     Title III of the ADA expressly contemplates the injunctive relief that Plaintiff Fischler seeks under 42 U.S.C. § 12188(a)(2).

28.     Because its Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff Fischler seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Defendant to retain a qualified consultant acceptable to Plaintiff Fischler to assist Defendant to comply with WCAG 2.1 guidelines for its Website:

      a.     Remediating the Website to be WCAG 2.1 compliant;

b. Training Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

c. Regularly checking the accessibility of the Website under the WCAG 2.1 guidelines;

d. Regularly testing user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies with the WCAG 2.1 guidelines; and,

e. Developing an accessibility policy that is clearly disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

29. Although Defendant may currently have centralized policies on maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

30. Without injunctive relief, Plaintiff Fischler and other visually impaired consumers will continue to be unable to independently use the Website, violating its rights.

31. Defendant has, upon information and belief, invested substantial sums in developing and maintaining its Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making its Website equally accessible to visually impaired customers.

32. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff Fischler seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendant's store, during the relevant statutory period ("Class Members").

34.    Plaintiff Fischler seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendant's store, during the relevant statutory period ("New York Subclass Members").

35.    Plaintiff Fischler seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Defendant's stores, during the relevant statutory period ("New York City Subclass Members").

36.    Common questions of law and fact exist amongst the Class Members, New York Subclass Members and New York City Subclass Members:

        a.    Whether Defendant's store is a place of "public accommodation";

        b.    Whether Defendant's Website is a commercial marketplace;

        c.    Whether the Website is a "public accommodation" or a service or good "of a place of public accommodation" under Title III of the ADA;

d. Whether the Website is a "place or provider of public accommodation" or an "accommodation, advantage, facility or privilege" under the NYSHRL or NYCHRL;

e. Whether the Website denies the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

f. Whether the Website denies the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

37. Plaintiff Fischler's claims are typical of the Class Members, New York Subclass Members and New York City Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Defendant has violated Title III of the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Website so it can be independently accessible to the visually impaired individuals.

38. Plaintiff Fischler will fairly and adequately represent and protect the Class and Subclasses' interests because he has retained and is represented by counsel competent and experienced in complex class action litigation, and because he has no interests antagonistic to the Class or Subclasses. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class and Subclasses, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclasses.

39. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members

predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

40.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

41.     Plaintiff Fischler, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

42.     Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

43.     Defendant's store is a public accommodation under Title III of the ADA, 42 U.S.C. § 12181(7). Its Website is a service, privilege, or advantage of Defendant's store. The Website is a service that is integrated with this location.

44.     Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

45.     Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods,

services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

46.     Under Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

47.     These acts violate Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Fischler, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, he has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

48.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Fischler requests the relief as set forth below.

SECOND CAUSE OF ACTION
VIOLATIONS OF THE NYSHRL

49.     Plaintiff Fischler, individually and on behalf of the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

50.     Defendant's State of New York store constitutes a sales establishment and public accommodation under N.Y. Exec. Law § 292(9). Defendant's Website is a service, privilege or advantage of Defendant. Defendant's Website is a service that is by and integrated with this store.

51.     Defendant is subject to NYSHRL because it owns and operates its New York store and the Website. Defendant is a "person" under N.Y. Exec. Law § 292(1).

52.     Defendant is violating the NYSHRL in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its New York store to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public. N.Y. Exec. Law §§ 296(2)(a), 296(2)(c)(i), 296(2)(c)(ii).

53.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its website accessible would neither fundamentally alter the nature of its business nor result in an undue burden to them.

-18-

54.     Defendant's actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Defendant has:

a.     Constructed and maintained a website that is inaccessible to Class Members with knowledge of the discrimination; and/or

b.     Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.     Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

55.     Defendant discriminates, and will continue in the future to discriminate against Plaintiff Fischler and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website and its New York store under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

56.     As Defendant's actions violate the NYSHRL, Plaintiff Fischler seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for every offense, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL

57.     Plaintiff Fischler, individually and on behalf the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58.     Defendant's New York City location is a sales establishment and public accommodation under the NYCHRL, N.Y.C. Admin. Code § 8-102(9), and its Website is a service that is integrated with that establishment.

59.     Defendant is subject to NYCHRL because it owns and operates its New York City store and its Website, making it a person under N.Y.C. Admin. Code § 8-102(1).

60.     Defendant is violating the NYCHRL in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its New York City store to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. N.Y.C. Admin. Code §§ 8-107(4)(a), 8-107(15)(a).

61.     Defendant's actions constitute willful intentional discrimination against the Subclass because of a disability, violating the NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a) and § 8-107(15)(a,) in that it has:

        a.     Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

        b.     Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

62. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff Fischler and the New York City Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and its establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the New York City Subclass will continue to suffer irreparable harm.

63. As Defendant's actions violate the NYCHRL, Plaintiff Fischler seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines for each offense, and reasonable attorneys' fees and costs. N.Y.C. Admin. Code §§ 8-120(8), 8-126(a).

FOURTH CAUSE OF ACTION
DECLARATORY RELIEF

64. Plaintiff Fischler, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

65. An actual controversy has arisen and now exists between the parties in that Plaintiff Fischler contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of its Website and by extension its store, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*,

N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

66.     A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fischler respectfully requests this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Defendant from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Admin. Code § 8-107, *et seq.,* and the laws of New York;

b.     A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in Title III of the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Admin. Code § 8-107, *et seq.,* and the laws of New York

d.     An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, punitive damages and fines;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Fischler demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      December 14, 2021

LIPSKY LOWE LLP


<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
Christopher H. Lowe
420 Lexington Avenue, Suite 1830
New York, New York 10017-6705
212.392.4772
doug@lipskylowe.com
chris@lipskylowe.com

*Attorneys for Plaintiff*